

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| JOAN MOORE HAYDEN, SURVIVING SPOUSE OF MARC HAYDEN (DECEASED), | ) ) ) ) | No. ED108695 |
| Appellant, | ) ) | Appeal from the Labor and Industrial Relations Commission |
| vs. | ) ) | |
| CUT-ZAVEN, LTD. AND PAPILLION, LTD., | ) ) ) | |
| Respondents. | ) | Filed: September 22, 2020 |

### Introduction

Joan Moore Hayden ("Claimant") appeals the Labor and Industrial Relations Commission's (the "Commission") decision affirming and supplementing the decision of the Administrative Law Judge ("ALJ"). Claimant is the surviving spouse of Marc Hayden ("Mr. Hayden"), a former hairdresser who filed a claim seeking workers' compensation benefits on March 3, 2015. Mr. Hayden's claim alleged he developed mesothelioma because he was exposed to asbestos from using asbestos-containing hair dryers through his employment as a hairdresser. Mr. Hayden died from mesothelioma on April 26, 2016. After Mr. Hayden's death, Claimant was substituted on his claim for compensation. On November 3, 2017, the ALJ denied Claimant compensation after finding Claimant "failed to meet h[er] burden of proof regarding medical

causation" and "[Mr. Hayden]'s employment was not the prevailing factor in his development of mesothelioma."

The Commission affirmed the ALJ's decision denying Claimant compensation but supplemented the award with a written opinion. Unlike the ALJ, the Commission found Claimant met her burden of production regarding medical causation by presenting expert medical testimony. Nonetheless, the Commission affirmed the ALJ's decision because it found the expert medical testimony regarding causation presented by Cut-Zaven and Papillion (collectively, "Employers") "more persuasive" than the expert medical testimony regarding causation presented by Claimant. In a footnote, the Commission also determined the "date of injury" for Mr. Hayden's claimed occupational disease was November 2013 because it found "the record . . . [showed Mr. Hayden] first suffered the disabling effects of mesothelioma when he suffered a heart attack in November 2013." Thus, the Commission found the 2005 amendments, requiring the Missouri workers' compensation law be strictly construed, governed Claimant's claim.

On appeal, Claimant argues the Commission erred in affirming the ALJ's award for several reasons. In Point I, Claimant argues the Commission acted without or in excess of its powers because it "failed to conduct its medical causation analysis under the correct legal standard." In Point II, Claimant argues the Commission's award was not supported by sufficient competent evidence. In Point III, Claimant argues the Commission acted without or in excess of its powers because it "applied an inaccurate legal standard for determining [Mr. Hayden's] appropriate 'date of injury.'" In Point IV, Claimant argues the Commission's determination of the date of Mr. Hayden's injury was not supported by sufficient competent evidence.

We find the Commission acted without or in excess of its powers by failing to analyze medical causation and Mr. Hayden's date of injury under the proper legal standards. We also find

2

the Commission's award determining medical causation and Mr. Hayden's date of injury is not supported by sufficient competent evidence and is against the weight of the evidence. Accordingly, the Commission's award is reversed and remanded.

**Factual and Procedural Background**

Mr. Hayden worked as a hairdresser for forty-seven years. Mr. Hayden graduated from beauty school in the late 1960s and worked for several salons, including Employers. Mr. Hayden worked for Cut-Zaven from 1976 until 1979 and Papillion from 1979 until 1982. Mr. Hayden was a self-employed hairdresser from 1983 until 2014.

In November 2013, Mr. Hayden began feeling "little stitches in [his] lungs." Mr. Hayden was hospitalized and given cardiac catherization, which showed two of his three vein grafts were occluded. Mr. Hayden underwent chest x-rays, which revealed no pleural fluid or changes, and was sent home. One month later, Mr. Hayden experienced dyspnea upon exertion. On January 31, 2014, Mr. Hayden underwent a CT scan, which showed a pleural effusion and thickening on his right lung. On February 4, 2014, the pleural effusion on Mr. Hayden's right lung was drained of fluid. Mr. Hayden's condition appeared to improve until the dyspnea returned accompanied by right-sided pleuritic chest pain. On June 3, 2014, a CT scan showed the pleural thickening on Mr. Hayden's right lung had progressed. When Mr. Hayden underwent a thoracoscopy on June 20, 2014, thickened fused pleura was discovered in his right lung and pleural biopsies were performed. Mr. Hayden was diagnosed with malignant mesothelioma on June 26, 2014, and began chemotherapy. Mr. Hayden quit his employment as a hairdresser one month after his diagnosis.

Mr. Hayden filed a claim for workers' compensation benefits on March 3, 2015, alleging he developed mesothelioma because he was exposed to asbestos from using asbestos-containing hair dryers through his employment as a hairdresser. On April 26, 2016, while his workers'

3

compensation claim remained pending, Mr. Hayden died of mesothelioma. Following Mr. Hayden's death, Claimant was substituted for Mr. Hayden on his claim for compensation.

On August 15, 2017, a hearing was held before an ALJ. At the hearing, the ALJ considered Mr. Hayden's deposition testimony.[1] Mr. Hayden testified he believed the hand-held hair dryers he used while working for Employers exposed him to asbestos. He testified he used these brands of hand-held hair dryers while working for Employers: Conair "Pro Style," Clairol "Son of a Gun," and "General Electric Power Turbo." He testified he believed asbestos was used around the hair dryer coils as a heat-reduction mechanism. Mr. Hayden testified he regularly opened the hair dryers and cleaned the filters if they became dirty until roughly 1979, although Mr. Hayden could not remember which specific models of hair dryers he cleaned.

While working for Employers, Mr. Hayden testified he was responsible for providing his own hair dryers. Mr. Hayden testified he owned two or three hair dryers at a time and replaced them at least twice a year. Mr. Hayden began missing work because of his mesothelioma roughly one month after his diagnosis on June 26, 2014. He admitted no doctor told him his exposure to hair dryers caused his mesothelioma. He also admitted he conducted no tests on hair dryers to determine whether his mesothelioma was caused by asbestos in the hair dryers. Mr. Hayden testified he never performed any home remodeling, construction work, or automobile maintenance in an occupational or non-occupational capacity.

The ALJ also considered the deposition testimony and reports of Dr. Thomas Hyers, a board-certified physician specializing in internal medicine and pulmonology. Dr. Hyers conducted an independent medical examination of Mr. Hayden at Claimant's attorney's request. Dr. Hyers prepared his first report on May 14, 2015. Dr. Hyers reviewed Mr. Hayden's medical records,

---

[1] Mr. Hayden's deposition was taken before his death on August 11, 2015.

digital images of x-rays, scholarly articles and documents regarding asbestos emissions from hair dryers provided by Claimant's attorney, and a letter including Mr. Hayden's "exposure history" provided by Claimant's attorney. Dr. Hyers stated one article from 1978 reviewing National Institute for Occupational Safety and Health ("NIOSH") testing "concern[ed] the excess release of asbestos fibers from hair dryers compared to other environmental sources of asbestos fibers." Another article "list[ed] asbestos-containing hair dryers published by the U.S. Consumer Product Safety Commission ["(CPSC")] in 1980." Another study published by the NIOSH and the CPSC in September 1979 concluded "the great majority of hair dryers tested emitted asbestos fibers above background."[2]

> Dr. Hyers stated the "exposure history" provided to him by Claimant's attorney indicated:
>
> [Mr. Hayden] worked as a hair stylist from 1967 to 1979 with several models of hair dryers that contained asbestos insulation linings. Many of the hand-held hair dryers of that time had asbestos insulation linings inside their barrels, and use of the dryers caused asbestos fibers to become airborne. Mr. Hayden would have inhaled these fibers during his work. Asbestos insulation linings were discontinued in hair dryers around 1979.

Based on his review of these materials, Dr. Hyers found Mr. Hayden suffered from malignant mesothelioma of the right pleura because he used asbestos-containing hair dryers at his workplace between 1967 and 1979. Dr. Hyers opined the inhalation of airborne asbestos fibers from the hair dryers Mr. Hayden used at his workplace was the prevailing factor causing Mr. Hayden's mesothelioma. Dr. Hyers concluded Mr. Hayden was completely and permanently disabled by his mesothelioma.

---

[2] Employers complain many of the NIOSH and CPSC studies relied upon by Dr. Hyers were not admitted into evidence. Our review of the record reveals the September 1979 NIOSH Testing Reports (Exhibit 6) and the 1978 Review of NIOSH Testing (Exhibit 7), which Dr. Hyers relies on to form his opinion, were not admitted into evidence. The 1980 list of asbestos-containing hair dryers published by CPSC was admitted into evidence. Expert opinion may be based on otherwise inadmissible evidence. *See State v. Woltering*, 810 S.W.2d 584, 586 (Mo. App. E.D. 1991); *see also State v. Baumruk*, 280 S.W.3d 600, 617 (Mo. banc 2009). The fact some of the studies relied upon by Dr. Hyers were not admitted into evidence is irrelevant.

On December 19, 2016, Dr. Hyers prepared a second report at Claimant's attorney's request after receiving Mr. Hayden's death certificate. In that report, Dr. Hyers noted "malignant mesothelioma has a long latency period. That is, the disease is associated with asbestos exposures that usually began 15 years or much longer before the appearance of clinical disease."

On April 4, 2017, Dr. Hyers testified by deposition. Dr. Hyers testified asbestos exposure caused Mr. Hayden's mesothelioma. Dr. Hyers opined Mr. Hayden was exposed to airborne asbestos fibers from the exhaust or affluent from hair dryers, which Mr. Hayden inhaled from his employment as a hairdresser. Dr. Hyers based his opinion on his review of the work history, documents, and articles Claimant's attorney provided him. Dr. Hyers testified asbestos exposure is the predominant cause of mesothelioma. He testified "the great majority" of mesotheliomas are due to asbestos exposure, and even brief or low level exposure is sufficient for mesothelioma to be designated an occupationally-related disease.

Dr. Hyers testified that, when he prepared his first and second reports, he had not reviewed Mr. Hayden's deposition testimony but rather accepted the assertions made in Mr. Hayden's "exposure history" provided by Claimant's attorney as fact. Upon later review of Mr. Hayden's deposition testimony, Dr. Hyers opined Mr. Hayden "may have had subsequent exposure" because Mr. Hayden did not know "precisely which product he was using contained asbestos and which ones didn't." Dr. Hyers testified he has not seen any hairstylists with mesothelioma in his practice evaluating mesothelioma patients. Dr. Hyers testified there are "probably" cases of mesothelioma caused by things other than asbestos exposure. Dr. Hyers testified, for example, there can be spontaneous cases of mesothelioma and cases of mesothelioma caused by "aragonite" minerals and "[i]onizing a radiation to a part of the body."

On April 24, 2017, Dr. Hyers prepared a third report at Claimant's attorney's request. In that report, he opined that, in deaths from malignant mesothelioma, the death certificate commonly lists the diagnosis but rarely lists its cause. Dr. Hyers testified that, in his experience reviewing hundreds of death certificates from malignant mesothelioma, "the death certificate has listed the cause (usually asbestos exposure) in less than five."[3]

The ALJ also considered the testimony and report of Dr. Harold Barkman, a board-certified physician specializing in pulmonary and internal medicine. Dr. Barkman conducted an independent medical examination of Mr. Hayden at Cut-Zaven's attorney's request. Dr. Barkman prepared his report on January 10, 2017. In forming his opinion, Dr. Barkman reviewed Mr. Hayden's medical records, Mr. Hayden's deposition, Dr. Hyers' second report, Mr. Hayden's death certificate, NIOSH studies, and an article on peritoneal mesothelioma from asbestos and hair dryers.

Dr. Barkman explained Mr. Hayden was diagnosed with mesothelioma on June 26, 2014, and died on April 26, 2016. He testified Mr. Hayden did not miss work and Mr. Hayden's condition did not become disabling until after his mesothelioma diagnosis on June 26, 2014. Dr. Barkman wrote a "majority of mesotheliomas are related to asbestos." However, Dr. Barkman opined Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Dr. Barkman opined a mesothelioma diagnosis "is either established by epidemiological research namely several studies pointing to a correlation or a pathology report relative to the presence of significant asbestos fibers." Dr. Barkman concluded that, because "[t]here is little scientific evidence pointing to an increase in mesothelioma in hairdressers" and Mr. Hayden's "pathology report does not comment on presence of asbestos fibers," Mr. Hayden's

---

[3] Dr. Hyers was deposed again on May 3, 2017, regarding the opinions he provided in his third report.

employment as a hairdresser was not the prevailing factor causing his mesothelioma. Dr. Barkman also noted Mr. Hayden's death certificate did not indicate whether Mr. Hayden's mesothelioma was asbestos-related.

Dr. Barkman agreed that "historically [Mr. Hayden] had exposure to asbestos containing compounds." Dr. Barkman also agreed the studies he reviewed "provided the[ ] handheld [hair dryers] did emit asbestos at varying levels." However, because Mr. Hayden did not know the amount or fiber type of various asbestos-containing compounds in the specific hair dryers he used, Dr. Barkman concluded his exposure to asbestos-containing hair dryers through his employment as a hairdresser was not the prevailing factor causing his mesothelioma. But Dr. Barkman wrote that, based on Mr. Hayden's deposition testimony he was last exposed to airborne asbestos in 1982 and the fact mesothelioma has a long latency period, exposure from 1967 to 1982 "would be within the window for [Mr. Hayden's] development of mesothelioma."

Dr. Barkman testified by deposition on March 29, 2017. Dr. Barkman testified that, in his opinion, Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Dr. Barkman testified it would be improper to conclude Mr. Hayden "was a hairdresser, he used a hairdryer and therefore the meso[thelioma] is related."

Dr. Barkman explained his opinion was based, in part, on the fact Mr. Hayden's death certificate did not state his mesothelioma was caused by asbestos. However, Dr. Barkman also testified it was "pretty rare" to see a death certificate mention whether a mesothelioma diagnosis was caused by asbestos. Dr. Barkman explained his opinion was also based, in part, on the fact Mr. Hayden's pathology report did not mention the presence of asbestos in Mr. Hayden's lung tissue. However, Dr. Barkman testified the materials he reviewed when preparing his report showed many of the hair dryers Mr. Hayden used contained asbestos and a NIOSH study showed

8

many of those hair dryers emitted asbestos. He testified that, based on Mr. Hayden's deposition, Mr. Hayden was most likely last exposed to airborne asbestos in 1982. Dr. Barkman testified, "[h]istorically, it appeared that [Mr. Hayden] only had exposure [to] a hair dryer in terms of asbestos compounds."

Dr. Barkman also explained his opinion was based, in part, on the fact "there are no studies out there definitively showing that all meso[theliomas] associated with hair dressing are associated with asbestos exposure" and Mr. Hayden's "exposure intensity" was "lacking." However, Dr. Barkman agreed "a majority of mesotheliomas come from asbestos exposure." He agreed there is no safe level of asbestos exposure for a worker. He also agreed even brief or low-level occupational exposure can cause mesothelioma. When asked what the other causes of mesothelioma are, Dr. Barkman testified, "Well, we don't know a lot of other causes" but "[t]here are case reports of folks that develop mesothelioma that have had no asbestos exposure" and mesothelioma can sometimes develop spontaneously. Dr. Barkman testified that, from a medical standpoint, exposure to asbestos is more important than the type of job a person holds when determining causation.

The ALJ denied Claimant benefits, concluding Claimant "failed to meet h[er] burden of proof regarding medical causation." The ALJ found Claimant offered "no testimony confirming [Mr. Hayden] was ever exposed to any specific models of asbestos containing hairdryers during any particular time period with the named employers. [Mr. Hayden]'s testimony lacked the specificity required to prove his claim." The ALJ found Dr. Barkman opined "there was a good probability [Mr. Hayden] was never subject to the risk of asbestos exposure because only certain models and serial numbers of the hairdryers he recalled using contained asbestos." The ALJ also found "Dr. Barkman's opinion more persuasive than Dr. Hyers' opinion." The ALJ discredited

9

Dr. Hyers' opinion that Mr. Hayden's employment as a hairdresser was the prevailing factor causing his mesothelioma because it found "Dr. Hyers' opinion . . . [was] based upon the assumption that [Mr. Hayden] was exposed to asbestos throughout his career as a hairdresser, and those assertions were not proved."

On review, the Commission affirmed the ALJ's denial of compensation and supplemented the ALJ's award with a written opinion. Unlike the ALJ, the Commission concluded Claimant met her burden of production regarding medical causation through Dr. Hyers' opinion testimony. The Commission disclaimed the ALJ's comments that Claimant offered "no testimony confirming [Mr. Hayden] was ever exposed to any specific models of asbestos containing hairdryers during any particular time period with the named employers. [Mr. Hayden]'s testimony lacked the specificity required to prove his claim." The Commission explained it believed these comments were "susceptible to an inference that [C]laimant was required to prove [Mr. Hayden] experienced an actual or specific exposure to asbestos to satisfy her burden with regard to the issue of causation," which the Missouri Court of Appeals has clearly rejected.[4] The Commission also disclaimed the ALJ's comment that Dr. Barkman "concluded there was a good probability [Mr. Hayden] was never subject to the risk of asbestos exposure because only certain models and serial numbers of the hairdryers he recalled using contained asbestos." The Commission stated the testimony from Dr. Barkman did not "sufficiently support" the ALJ's statement.

---

[4] *See Vickers v. Mo. Dep't of Pub. Safety*, 283 S.W.3d 287, 295 (Mo. App. W.D. 2009) (holding a claimant need not identify a specific instance of occupational exposure or establish by a medical certainty that his or her injury was caused by an occupational disease to be entitled to compensation); *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 261 (Mo. App. W.D. 2013) (holding a claimant need not prove a specific instance of occupational exposure to meet his or her burden of production); *Smith v. Capital Region Med. Ctr.*, 458 S.W.3d 406, 415 (Mo. App. W.D. 2014) (a claimant is "not required to present evidence of specific exposure to an occupational disease in the workplace; rather, [the claimant must] submit medical evidence establishing a probability that working conditions caused the disease.")

Nonetheless, the Commission affirmed the ALJ's award because it found "Dr. Barkman provided the more persuasive analysis of the question whether employee's occupational exposure was the prevailing factor causing his mesothelioma." The Commission acknowledged Dr. Barkman and Dr. Hyers both agreed Mr. Hayden was exposed to asbestos through his employment as a hairdresser but credited Dr. Barkman's opinion that occupational exposure was not the prevailing factor causing Mr. Hayden's mesothelioma. The Commission did not state why it found Dr. Barkman more persuasive than Dr. Hyers.

In a footnote, the Commission also determined the "date of injury" for Mr. Hayden's claimed occupational disease was November 2013 because it found "the record . . . [showed Mr. Hayden] first suffered the disabling effects of mesothelioma when he suffered a heart attack in November 2013." Thus, the Commission found the 2005 amendments, requiring the Missouri workers' compensation law be strictly construed, governed Claimant's claim.

Claimant appeals the Commission's decision.

**Standard of Review**

Our review of appeals of the Commission's decision is governed by the Missouri Constitution and section 287.495.1.[5] *Harris v. Ralls Cty.*, 588 S.W.3d 579, 594 (Mo. App. E.D. 2019) (citing *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 774 (Mo. App. E.D. 2015)). Article V, section 18 of the Missouri Constitution states:

> All final decisions, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.

---

[5] All statutory references are to RSMo (2015), unless otherwise indicated.

MO. CONST. art. V, § 18. Section 287.495.1 states we may "modify, reverse, remand for rehearing, or set aside" the Commission's award "upon any of the following grounds and no other:" (1) the Commission acted without or in excess of its powers; (2) the Commission's award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003) (footnote omitted) (citing § 287.495.1).

The Commission's factual findings are binding and conclusive only to the extent they are supported by sufficient competent evidence and were reached in the absence of fraud. *Archer v. City of Cameron*, 460 S.W.3d 370, 374 (Mo. App. W.D. 2015) (citing *Coday v. Div. of Emp't Sec.*, 423 S.W.3d 775, 778 (Mo. banc 2014)). "However, this [C]ourt reviews questions of law independently and is not bound by the Commission's conclusions of law or its application of law to the facts." *Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 764 (Mo. App. E.D. 2015) (citing *Grubbs v. Treasurer of Missouri as Custodian of Second Injury Fund*, 298 S.W.3d 907, 910 (Mo. App. E.D. 2009)). "Sufficient competent evidence is evidence which has probative force on the issues and from which the trier of facts can reasonably decide the case." *Harris*, 588 S.W.3d at 597-98 (internal quotations omitted). "This Court 'must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it.'" *Porter v. RPCS, Inc.*, 402 S.W.3d 161, 171 (Mo. App. S.D. 2013) (quoting *Fitzwater v. Dep't of Pub. Safety*, 198 S.W.3d 623, 627 (Mo. App. W.D. 2006)).

In reviewing the Commission's decision, we view the evidence objectively and are not required to view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Wilson v. Progressive Waste Sols. of Missouri, Inc.*, 515 S.W.3d 804, 807 (Mo. App. E.D. 2017). Rather, we examine the evidence in the context of the whole record

12

when determining whether the award is supported by competent and sufficient evidence. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."[6] *Id.*

**Discussion**

*Points I and II: Medical Causation*

Claimant's first and second points challenge the Commission's determination Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Before addressing whether the Commission determined medical causation based upon an erroneous legal analysis or the Commission's determination of medical causation was not supported by sufficient competent evidence, we first discuss the standard for proving medical causation in occupational disease claims.

"An 'occupational disease' is 'an identifiable disease arising with or without human fault out of and in the course of the employment.'" *Cheney v. City of Gladstone*, 576 S.W.3d 308, 315 (Mo. App. W.D. 2019) (citing § 287.067.1). "Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of occupational disease." *Id.* "To support a finding of occupational disease, an employee must provide substantial and competent evidence that they have contracted an occupationally induced disease rather than an ordinary disease of life." *Id.* (citing *Greenlee v. Dukes Plastering Svc.*, 75 S.W.3d 273, 277 (Mo. banc 2002)).

---

[6] The Missouri Supreme Court has recognized "[t]he constitutional standard ('supported by competent and substantial evidence upon the whole record') is in harmony with the statutory standard ('sufficient competent evidence in the record'). *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). In this opinion, we use "sufficient competent evidence," unless quoting from another authority.

A claimant must prove (1) his or her "exposure to the disease . . . was greater than or different from that which affects the public generally" and (2) "there was a recognizable link between the disease and some distinctive feature of the employee's job which is common to all jobs of that sort." *Greenlee*, 75 S.W.3d at 277 (quoting *Kelley v. Banta & Stude Constr. Co., Inc.*, 1 S.W.3d 43, 48 (Mo. App. E.D. 1999)). "To show a recognizable link between the disease and the job, a claimant must produce evidence 'establishing a causal connection between the conditions of employment and the occupational disease.'" *Cheney*, 576 S.W.3d at 315 (citing *Smith v. Cap. Region Med. Ctr.*, 412 S.W.3d 252, 259 (Mo. App. W.D. 2013)). This evidence must be medical evidence that establishes "a *probability* that working conditions caused the disease, although they need not be the sole cause." *Id.* (alteration in original) (quoting *Smith*, 412 S.W.3d at 261). A claimant need not establish, "by a *medical certainty*, that his or her injury was caused by an occupational disease in order to be eligible for compensation." *Smith*, 412 S.W.3d at 259-60 (alteration in original). "An injury or death by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability." § 287.067.2. "'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* (alterations omitted).

Point I: Medical Causation Analysis Erroneous as a Matter of Law

In her first point, Claimant argues the Commission acted without or in excess of its powers because it "failed to conduct its medical causation analysis under the correct legal standard" by adopting Dr. Barkman's opinion that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing Mr. Hayden's mesothelioma. She contends "[w]hen the Commission conducts a medical causation analysis under an incorrect legal standard, it has erred as a matter of

14

law"; thus, she argues we must review the Commission's decision regarding medical causation *de novo*. We agree.

Although the Commission's finding of causation is a question of fact we must usually defer to, *Schlereth v. Aramark Uniform Servs., Inc.*, 589 S.W.3d 645, 650 (Mo. App. E.D. 2019), the Commission's dismissal of an expert's causation opinion because it lacks specific forms of proof is a misapplication of law. *See Townser v. First Data Corp.*, 215 S.W.3d 237, 243-44 (Mo. App. E.D. 2007). The Commission's award found Dr. Barkman "provided the more persuasive analysis of the question whether [Mr. Hayden]'s occupational exposure was the prevailing factor causing his mesothelioma." Although the Commission never explicitly found Claimant's expert Dr. Hyers was not persuasive or not credible, it is implicit in the Commission's phrasing it found Dr. Barkman *more* persuasive *than* Dr. Hyers, as Drs. Hyers and Barkman were the only two medical experts to testify regarding the causation of Mr. Hayden's mesothelioma. *See Schlereth*, 589 S.W.3d at 654.

The Commission did not state why it found Dr. Barkman's opinion "more persuasive" than Dr. Hyers' opinion. However, a review of Dr. Barkman's reports and testimony shows he believed Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma, in part, because "there are no studies out there definitively showing that all meso[theliomas] associated with hair dressing are associated with asbestos exposure." Dr. Barkman testified the publication of such studies would signify that "everybody . . . agree[s]" hairdressing is linked to developing mesothelioma. Dr. Barkman testified that, without such studies, Mr. Hayden's employment as a hairdresser could not have been the prevailing factor causing his mesothelioma because "[i]t just isn't supported scientifically."

15

By adopting Dr. Barkman's medical causation rationale and finding it "more persuasive" than Dr. Hyers', the Commission erred as a matter of law. Section 287.067.1 establishes no requirement in Missouri that expert opinion be based on epidemiological studies.[7] Section 287.067.1 also establishes no requirement in Missouri that a claimant must show, "by a *medical certainty*, that his or her injury was caused by an occupational disease." *See Smith*, 412 S.W.3d at 259 (alteration in original). Rather, section 287.067.1 requires that expert opinion be based on medical evidence establishing "a *probability* that working conditions caused the disease." *See Cheney*, 576 S.W.3d at 315 (alteration in original).

Dr. Barkman testified his opinions were based on "a reasonable degree of medical certainty." The "reasonable degree of medical certainty" standard requires the expert's opinions to be more likely, or probable, than not. *See Baker v. Guzon*, 950 S.W.2d 635, 647 (Mo. App. E.D. 1997). However, by adopting Dr. Barkman's conclusion that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma because "there are no studies out there *definitively showing that all meso[theliomas] associated with hair dressing are associated with asbestos exposure*," the Commission essentially adopted a requirement that Claimant must show, by a medical certainty, Mr. Hayden's mesothelioma was caused by his employment. (emphasis added).

In *Townser*, this Court held the Commission misapplied the law when it found the employer's expert opinion more probative than the employee's expert opinion because the employer's expert relied on an ergonomic study[8] while the employee's expert did not. 215 S.W.3d

---

[7] Dr. Barkman explained in his deposition testimony that epidemiology is a study of populations. In the context of this case, Dr. Barkman explained such a study would "look[ ] at groups of hairdressers and determin[e] . . . how many meso[theliomas] there are and exposure data to tie the two together."

[8] An ergonomic study is "the scientific study of people at work." Nat'l Inst. for Occupational Safety & Health, *Ergonomics & Musculoskeletal Disorders*, CDC, https://www.cdc.gov/niosh/topics/ergonomics/default.html (last

at 243-44. We stated "[t]here is no requirement in Missouri that expert opinion regarding causation of an occupational disease be based on an ergonomic study." *Id.* at 243. Instead, the claimant must establish a "probability that the occupational disease was caused by conditions in the work[]place." *Id.* at 242. We found it "elevate[s the e]mployee's burden of proof" to require an expert to rely on an ergonomic study for his or her opinion to be considered probative. *Id.* Therefore, this Court held "dismissal of [the employee's expert witness]'s opinion solely on the basis that he lacked an ergonomic study [wa]s a misapplication of the appropriate law." *Id.* at 244.

Here, the Commission found Dr. Barkman's medical causation analysis, which emphasized no epidemiological studies "definitively show[ed]" all hairdressers with mesothelioma were exposed to asbestos through their employment, was more persuasive than Dr. Hyers' medical causation analysis. In doing so, the Commission elevated Claimant's burden of proof by essentially requiring her expert to rely on epidemiological studies signifying a scientific consensus to be considered probative. The Commission's adoption of Dr. Barkman's medical causation analysis essentially required Claimant to prove, by a medical certainty, Mr. Hayden's employment as a hairdresser was the prevailing factor causing his mesothelioma. Because "[t]here is no requirement in Missouri that expert opinion regarding causation of an occupational disease be based on an ergonomic study," *Id.* at 243, it follows there is no requirement that expert opinion regarding causation of an occupational disease be based on epidemiological studies to be considered probative. The Commission's finding to the contrary is erroneous as a matter of law. *See id.* at 244.

Point I is granted.

---

visited Sept. 9, 2020). Ergonomic studies examine a specific employee's capabilities and limitations within a particular work environment. *Id.*

17

Point II: Medical Causation Determination Not Supported by Sufficient Competent Evidence and Against the Weight of the Evidence

In her second point, Claimant argues the Commission's determination Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma was not supported by sufficient competent evidence. We agree.

Because Claimant brings a challenge that no sufficient competent evidence supports the Commission's determination of medical causation, she must:

1. Identify a factual proposition needed to sustain the result;

2. Marshal all record evidence supporting that proposition;

3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.

*Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 (Mo. App. S.D. 2012).

"Adherence to this analytical formula is mandatory . . . because it reflects the underlying criteria necessary for a successful challenge." *Robinson v. Loxcreen Co., Inc.*, 571 S.W.3d 247, 251 (Mo. App. S.D. 2019) (alterations omitted). "The absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge." *Id.* Claimant does not identify this specific analytical process in her brief. While Claimant failed to adhere to the analytical process in form, she did so in substance. We find the argument portion of Claimant's Point II fulfills the requirements of the analytical sequence. *See Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 928 (Mo. App. S.D. 2017).

Claimant challenges the Commission's factual determination that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Claimant

18

identifies the supporting evidence for that proposition by discussing Dr. Barkman's ultimate conclusion was Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Claimant further discusses Dr. Barkman's opinion was based on the fact there are no scientific studies showing "all meso[theliomas] associated with hair dressing are associated with asbestos exposure"; Mr. Hayden's "pathology report d[id] not comment on presence of asbestos fibers"; and Mr. Hayden's death certificate did not indicate whether Mr. Hayden's mesothelioma was asbestos-related. We will address all three of Dr. Barkman's reasons in support of his ultimate opinion.

First, we note Claimant does not highlight her own expert's testimony as evidence contrary to the Commission's conclusion. Rather, she contends aspects of Dr. Barkman's opinion constitutes contrary evidence that rendered Dr. Barkman's ultimate conclusion not probative. Claimant argues several facets of Dr. Barkman's testimony undermine his ultimate conclusion regarding medical causation and render his opinion unsupported by sufficient competent evidence. Specifically, Claimant argues:

> Because Dr. Barkman testified (1) the great majority of mesotheliomas are caused by asbestos exposure; (2) asbestos can cause mesothelioma even with low exposure; (3) a history of asbestos exposure is more important than one's type of job from a medical causation standpoint; (4) there have only been limited case reports of idiopathic mesothelioma when there is no known history of asbestos exposure; and (5) there was occupational asbestos exposure in this case, then his testimony supports the conclusion that, in all probability, the primary factor causing Mr. Hayden's development of mesothelioma was his employment-based asbestos exposure as opposed to another factor.

We agree with Claimant. The Commission's determination Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma is not supported by sufficient competent evidence. We acknowledge "acceptance or rejection of medical evidence is for the Commission" to determine. *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179 (Mo. App.

S.D. 2004). When competing medical causation testimony is presented, it is generally the Commission's prerogative to choose which testimony to believe. *Bond v. Site Line Surveying*, 322 S.W.3d 165, 171 (Mo. App. W.D. 2010). However, here, the issue is not one of credibility and weight to be given to competing experts. Rather, the issue is the Commission's decision was not supported by sufficient competent evidence. "The Commission is free to believe whatever expert it chooses *as long as* that expert's opinion is based on substantial and competent evidence." *Cole v. Alan Wire Co., Inc.*, 521 S.W.3d 308, 315 (Mo. App. S.D. 2017) (emphasis added) (quoting *Beatrice v. Curators of Univ. of Mo.*, 438 S.W.3d 426, 437 (Mo. App. W.D. 2014)).

There is overwhelming evidence in the record before us to conclude Dr. Barkman's ultimate opinion was not based on sufficient competent evidence. Although Dr. Barkman concluded Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma, "[t]he ultimate importance of the expert testimony is to be determined from the testimony as a whole." *McGrath v. Satellite Sprinkler Sys., Inc.*, 877 S.W.2d 704, 708 (Mo. App. E.D. 1994), *overruled on other grounds by Hampton*, 121 S.W.3d 220. "[A]n expert's expression of an ultimate conclusion, standing alone, does not constitute substantial competent evidence to support an administrative decision." *Randolph Cty. v. Moore-Ransdell*, 446 S.W.3d 699, 711 (Mo. App. W.D. 2014) (Ahuja., J., dissenting). "[I]nstead, the expert must provide specifics explaining how and why his or her opinions apply to a particular case."[9] *Id.* (footnote in original).

Looking beyond Dr. Barkman's ultimate causation conclusion, the remainder of Dr. Barkman's report and testimony establishes Mr. Hayden's employment as a hairdresser was the

---

[9] *See generally Smith v. U.S. Postal Serv.,* 69 S.W.3d 926, 929 (Mo. App. S.D. 2002) (holding that, where medical evidence is required to establish causation, a doctor's conclusory opinion, without more, does not constitute substantial and competent evidence); *Kansas City Power & Light Co. v. Searcy,* 28 S.W.3d 891, 896 (Mo. App. W.D. 2000) (rejecting doctor's opinion that particular work assignment would cause employee to experience "stress related panic attacks," where letter "simply concludes, without providing any specifics," that this would result); *Reed v. Labor & Indus. Relations Comm'n,* 664 S.W.2d 650, 653 (Mo. App. S.D. 1984).

prevailing factor causing his mesothelioma. Like Dr. Hyers, Dr. Barkman found Mr. Hayden was exposed to airborne asbestos through his employment as a hairdresser. He reported, "historically[, Mr. Hayden] had exposure to asbestos containing compounds." He testified, "the hair dryers emit[ted] asbestos particles." He further testified "it appeared that [Mr. Hayden] *only* had exposure [to] a hair dryer in terms of asbestos compounds." (emphasis added). Dr. Barkman testified that, based on Mr. Hayden's deposition testimony he was last exposed to airborne asbestos in 1982 and the fact mesothelioma has a long latency period, exposure from 1967 to 1982 "would be within the window for [Mr. Hayden's] development of mesothelioma."[10]

Despite Dr. Barkman's assertion Mr. Hayden's "exposure intensity" to asbestos was "lacking" and, thus, Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma, Dr. Barkman admitted there is no safe level of asbestos exposure for a worker. He also admitted even brief or low-level occupational exposure can cause mesothelioma. Dr. Barkman admitted actual exposure to asbestos is more important than the type of job a person holds when determining whether a person's employment was the prevailing factor causing an occupational disease, contradicting his own criticism that "there are no studies out there definitively showing that all meso[theliomas] associated with hair dressing are associated with asbestos exposure." Where, as here, there is a known occupational exposure to asbestos the lack of an epidemiology study regarding the job performed by the employee is not probative.

---

[10] In their brief and during oral argument, Employers argued the record does not support Mr. Hayden was exposed to "airborne asbestos." This argument is meritless. Although the ALJ found Claimant "failed to meet h[er] burden of proof regarding medical causation" because she never proved Mr. Hayden "was exposed to asbestos throughout his career as a hairdresser," the Commission disclaimed these statements in its award. "We review the findings and award of the Commission rather than those of the ALJ, to the extent that it departs from the ALJ's ruling." *Harley-Davidson Motor Co., Inc. v. Jones*, 557 S.W.3d 328, 331 (Mo. App. W.D. 2018) (quotations omitted). The Commission's finding Mr. Hayden was exposed to asbestos through his employment as a hairdresser is well-supported by the record. Both Dr. Hyers and Dr. Barkman testified Mr. Hayden was exposed to "airborne asbestos" through his employment as a hairdresser.

Like Dr. Hyers, Dr. Barkman reported and testified a "great majority of mesotheliomas are related to asbestos." Dr. Barkman testified mesothelioma is a "signal disease" for asbestos exposure—that is, the diagnosis of mesothelioma points to asbestos exposure as its cause because "the majority of [mesotheliomas] are related to asbestos exposure." Although Dr. Barkman testified "[t]here are case reports of folks that develop mesothelioma that have had no asbestos exposure" and mesothelioma can sometimes develop spontaneously, he identified no other known cause of mesothelioma and conceded Mr. Hayden was exposed to airborne asbestos by using hair dryers during his employment.

Dr. Barkman also admitted it was "pretty rare" for a death certificate to mention whether a mesothelioma diagnosis was caused by asbestos, despite his earlier testimony that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma because Mr. Hayden's death certificate did not comment his mesothelioma was caused by asbestos. Dr. Barkman testified he could not recall ever seeing a death certificate listing mesothelioma as the cause of death where the mesothelioma was attributable to any cause other than asbestos or asbestos exposure. Dr. Barkman's admissions corroborate Dr. Hyers' opinion that, in his experience reviewing hundreds of mesothelioma death certificates, the cause of mesothelioma is listed "in less than five." The absence of a reference to asbestos on Mr. Hayden's mesothelioma death certificate, which is usually absent on such a death certificate, is not probative.

Dr. Barkman testified Mr. Hayden's exposure to asbestos through his employment was not the prevailing factor causing his mesothelioma because, in the pathology report, "there was a lack of comment on whether there was any other evidence of asbestos on the lung, namely in the lung itself or on the pleural surface." However, Dr. Barkman admitted the lack of comment regarding asbestos on Mr. Hayden's lung may have been because pathologists did not take "the opportunity

22

to look further and see whether or not they could identify any asbestos that would meet the pathologic criteria," not because asbestos was not present. He testified, "even though the[pathologists] d[id] have tissue, apparently they didn't – *I don't know if they didn't look or they didn't identify it*, but regardless they made no comment about it, so that's the standard." (emphasis added). Dr. Barkman is speculating as to the significance of the absence of asbestos in Mr. Hayden's pathology report.

Dr. Barkman reached his opinion that Mr. Hayden's employment as a hairdresser could not have been the prevailing factor causing his mesothelioma by emphasizing what evidence was absent, i.e., no mention of asbestos on Mr. Hayden's death certificate, no epidemiological studies, and no mention of asbestos on Mr. Hayden's pathology report. However, Dr. Barkman's reliance on this absent evidence is wholly unexplained, contradictory, and speculative. The evidence showing Mr. Hayden sustained occupational exposure to asbestos and contracted a signal disease from that exposure is more probative on the issue of medical causation than the absence of certain evidence noted by Dr. Barkman without meaningful and consistent explanation. *Pace v. City of St. Joseph*, 367 S.W.3d 137, 148 (Mo. App. W.D. 2012) (quoting *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703-04 (Mo. App. 1973)) ("[C]ompetent and substantial evidence . . . may not rest o[n] surmise or speculation. The contradictory testimony of a single witness relied on to prove a fact does not constitute substantial evidence and is not probative of that fact in the absence of explanation or other circumstances tending to explain the contradiction.")

Dr. Barkman's testimony, reviewed in the context of his testimony as a whole, establishes Claimant's prima facie case for medical causation and shows Mr. Hayden's employment as a hairdresser was the prevailing factor causing his mesothelioma. Dr. Barkman's three reasons for his contrary ultimate conclusion pale in comparison to his other testimony. The fact Dr. Barkman

"said the magic words" by expressing an ultimate causation opinion does not convince us otherwise. *See Randolph Cty.*, 446 S.W.3d at 711 (Ahuja, J., dissenting). "[W]hen a workers' compensation record shows no conflict in the evidence or impeachment of witnesses, 'the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses.'" *Copeland v. Thurman Stout, Inc.*, 204 S.W.3d 737, 743 (Mo. App. S.D. 2006) (quoting *Houston*, 133 S.W.3d at 179).

The evidence before the Commission does not reasonably support its conclusion that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma. Therefore, we need not defer to the Commission's decision to believe Dr. Barkman's opinion was more persuasive than Dr. Hyers. *Harris*, 588 S.W.3d at 596. The Commission's finding that Mr. Hayden's employment as a hairdresser was not the prevailing factor causing his mesothelioma is reversed.

Point II is granted.

*Points III and IV: Date of Injury*

Claimant's third and fourth points challenge the Commission's determination Mr. Hayden's date of injury occurred in November 2013. Claimant does not challenge the Commission's declaration the 2005 amendments, requiring strict construction of the workers' compensation law, apply to her claims. Claimant instead argues the Commission's improper determination Mr. Hayden's date of injury occurred in November 2013 precludes certain amendments (the "2014 Amendments")[11] to the workers' compensation law from applying to her

---

[11] On January 1, 2014, certain amendments to the workers' compensation law (the "2014 Amendments") went into effect. One of the 2014 Amendments created a category of occupational diseases known as "occupational diseases due to toxic exposure." *See* § 287.067.11 (2014). Mesothelioma is included in the definition of "occupational diseases due to toxic exposure." *Id.* The 2014 Amendments also provided that, in certain circumstances, an employee who becomes permanently totally disabled or dies because of an occupational disease due to toxic exposure may receive enhanced benefits. *See* § 287.200.4. These enhanced benefits may be available for mesothelioma claims filed on or after January 1, 2014. *See Accident Fund Ins. Co. v. Casey*, 550 S.W.3d 76, 80 (Mo. banc 2018). The question of

24

claims on remand. Before addressing whether the Commission determined Mr. Hayden's date of injury based upon an erroneous legal analysis or the Commission's determination of Mr. Hayden's date of injury was not supported by sufficient competent evidence, we first discuss the standard for deciding the date of injury applicable to occupational disease claims.

Generally, the date of injury for a workers' compensation claim is used to calculate the statute of limitations and determine which version of the workers' compensation law applies.[12] The statute of limitations for filing a claim for workers' compensation benefits is controlled by the date of injury. Section 287.430 provides:

> no proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the *date of injury* or death, or the last payment made under this chapter on account of the injury or death, except that if the report of the injury or the death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the *date of injury*, death, or last payment made under this chapter on account of the injury or death.

*Lawrence v. Anheuser Busch Cos., Inc.*, 310 S.W.3d 248, 250 (Mo. App. E.D. 2010) (emphasis added) (citing § 287.430).

"When an employee is injured by a distinct event that occurs at a particular point in time, determining the date of injury is straightforward." *Guinn v. Treasurer of State*, 577 S.W.3d 847, 851 (Mo. App. S.D. 2019). However, the same is "not true of an occupational disease, by which an employee is injured through a process that occurs gradually over time." *Id.* As such, Section 287.063.3 sets forth when the statute of limitations begins running for an occupational disease claim in different terms:

---

what benefits Claimant is entitled to under the workers' compensation law is not before us on appeal. We express no opinion regarding whether Claimant is entitled to enhanced benefits under the 2014 Amendments.

[12] "[I]t is a well-established principle that the law in effect on the date of injury governs a claim under the Workers' Compensation Law." *Pavia v. Smitty's Supermarket*, 366 S.W.3d 542, 549 (Mo. App. S.D. 2012) (citations omitted).

[t]he statute of limitation referred to in section 287.430 shall not begin to run in cases of occupational disease *until it becomes reasonably discoverable and apparent that an injury has been sustained related to such exposure* . . . .

*Lawrence*, 310 S.W.3d at 250–51(emphasis added).[13]

Generally, a condition caused by an occupational disease "becomes apparent when an employee is *medically advised* that he or she can no longer physically continue in the suspected employment." *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 416 (Mo. App. W.D. 1988) (alteration in original) (quotations omitted), *overruled on other grounds by Hampton*, 121 S.W.3d 220. "[A]n employee cannot be expected . . . to institute [a] claim until he has reliable information that his condition is the result of his employment." *Id.* "[G]iven that there must be competent and substantial evidence of this link, the claimant is entitled to rely on a physician's diagnosis of his condition rather than his own impressions." *Id.*

"An employee can suffer an injurious exposure prior to becoming disabled." *Garrone v. Treasurer of State of Missouri*, 157 S.W.3d 237, 244 (Mo. App. E.D. 2004) (citing *Enyard v. Consolidated Underwriters*, 390 S.W.2d 417, 429 (Mo. App. 1965)). However, "[t]he injurious exposure does not become a compensable injury until it becomes disabling." *Id.*

<u>Point III: Date of Injury Determination Erroneous as a Matter of Law</u>

In her third point, Claimant argues the Commission acted without or in excess of its powers because it "applied an inaccurate legal standard for determining [Mr. Hayden's] appropriate 'date of injury.'" Therefore, Claimant argues the Commission's finding is not binding on this Court and is subject to *de novo* review. We agree.

---

[13] Respondents argue the date of injury for an occupational disease claim and the event that triggers the statute of limitations on an occupational disease claim are "two separate principles of workers['] compensation law subject to their own individual analysis." Respondents' position is incorrect. As explained above, when occupational disease claims are at issue, the moment "it becomes reasonably discoverable and apparent that an injury has been sustained related to such exposure" is the standard used to determine when the statute of limitations accrues because it is challenging to determine a traditional "date of injury" for a disease that occurs gradually over time. *See Guinn v. Treasurer of State*, 577 S.W.3d 847, 851 (Mo. App. S.D. 2019).

26

We acknowledge "[t]he question as to when a compensable injury becomes reasonably discoverable and apparent is a question of fact to be determined by the Commission." *Lawrence*, 310 S.W.3d at 252. However, the Commission's "finding of ultimate facts through the application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law." *Shipp v. Treasurer of State*, 99 S.W.3d 44, 50 (Mo. App. E.D. 2003), *overruled on other grounds by Hampton*, 121 S.W.3d 220.

The Commission cited no rule of law informing its conclusion that the "date of injury" for Mr. Hayden's occupational disease was November 2013. Nonetheless, the Commission declared Mr. Hayden's date of injury occurred in November 2013 because Mr. Hayden "*first suffered the disabling effects* of mesothelioma . . . in November 2013." (emphasis added). As discussed above, the relevant legal standard applicable to determining the date of injury in an occupational disease claim is set forth in section 287.063.3. The moment "it becomes *reasonably discoverable and apparent that an injury has been sustained related to such exposure*" is the date of injury in an occupational disease claim. § 287.063.3 (emphasis added). By determining Mr. Hayden's date of injury through application of its own "disabling effects" standard rather than the standard set forth by section 287.063.3, the Commission misapplied the law. *See Guinn*, 577 S.W.3d at 851-52.

Point III is granted.

Point IV: Date of Injury Determination Not Supported by Sufficient Competent Evidence and Against the Weight of the Evidence

In her fourth point, Claimant argues the Commission's determination of the date of Mr. Hayden's injury was not supported by sufficient competent evidence. We agree.

As we discussed in Point II, because Claimant brings a challenge that no sufficient competent evidence supports the Commission's determination of Mr. Hayden's date of injury, she must:

27

1. Identify a factual proposition needed to sustain the result;

2. Marshal all record evidence supporting that proposition;

3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.

*Jordan*, 383 S.W.3d at 95.

Just as in Point II, we find the argument portion of Claimant's Point IV fulfills the requirements of this analytical sequence despite her failure to identify the appropriate rule. *See Nichols*, 528 S.W.3d at 928. Claimant challenges the Commission's factual determination that Mr. Hayden's date of injury occurred in November 2013 when he suffered chest discomfort. Claimant suggests no evidence supports the Commission's determination that Mr. Hayden's November 2013 chest discomfort was connected to his mesothelioma. Claimant contends the evidence instead shows that, while Mr. Hayden experienced chest discomfort in November 2013, it was not until late January 2014 that a CT scan showed a pleural effusion and thickening on his right lung and June 2014 that he underwent pleural biopsies. Claimant further contends the evidence showed Mr. Hayden was diagnosed with malignant mesothelioma on June 26, 2014, and continued working until one month after his diagnosis.

There is overwhelming evidence in the record before us to conclude the Commission's determination Mr. Hayden's date of injury occurred in November 2013 was not based on sufficient competent evidence. Nothing in the record shows Mr. Hayden was given reliably certain information that his chest discomfort in November 2013 was related to mesothelioma and the result of his employment as a hairdresser. To the contrary, Mr. Hayden was sent home with no restrictions after his chest x-rays in November 2013 revealed no pleural fluid or changes. It was

28

not until January 31, 2014, that Mr. Hayden's scans began showing a pleural effusion and thickening on his right lung. Even then, Mr. Hayden was not diagnosed with malignant mesothelioma until June 26, 2014. Mr. Hayden worked without restriction until he quit his employment as a hairdresser one month after his diagnosis. Notably, Employers' own expert, Dr. Barkman, testified Mr. Hayden did not miss work until after June 26, 2014. Dr. Barkman further testified Mr. Hayden would not have known he had mesothelioma and Mr. Hayden's mesothelioma did not manifest symptoms that caused his earning capacity to be disrupted or his condition to be disabling until June 26, 2014.

The Commission's finding that Mr. Hayden's mesothelioma became disabling in November 2013 when he first suffered chest discomfort is not supported by sufficient competent evidence. Mr. Hayden did not suffer a compensable injury until June 26, 2014. The Commission's finding Mr. Hayden's date of injury occurred in November 2013 is reversed and its award is modified to reflect Mr. Hayden's date of injury occurred June 26, 2014.

Point IV is granted.

## Conclusion

We find the Commission acted without or in excess of its powers by failing to analyze medical causation and Mr. Hayden's date of injury under the proper legal standards. We also find the Commission's award determining medical causation and Mr. Hayden's date of injury is not supported by sufficient competent evidence and is against the weight of the evidence. We hold Mr. Hayden's employment as a hairdresser was the prevailing factor causing his mesothelioma. We hold his date of injury was June 26, 2014. The Commission's award is reversed and remanded with instructions that all remaining issues not reached by the ALJ or the Commission, including

29

but not limited to, last exposure, compensation, medical bills, enhanced benefits (if any), and attorney's fees and costs, be resolved in accordance with this opinion.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.